ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| WANDA LÓPEZ; KENNETH DONES; CARMEN MILAGROS FALCÓN VARGAS<br>Recurrentes<br><br>v.<br><br>JUNTA DE DIRECTORES Y CONSEJO TITULARES COND. GALLARDO GARDENS, REP. POR SU PRES.<br><br>Recurridos | KLRA202500294 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Querella núm.:<br>C-SAN-2024-0020115<br>C-SAN-2024-0020129<br>C-SAN-2024-0020241<br><br>Sobre:<br>Ley de Condominios de Puerto Rico, Ley Núm. 129 de 16 de agosto de 2020, según enmendada |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de julio de 2025.

Comparece la señora Wanda López (Sra. López), el señor Kenneth Dones (Sr. Dones) y la señora Carmen Milagros Falcón Vargas (Sra. Falcón), mediante el presente recurso de *Revisión Administrativa* y nos solicita que revoquemos la *Resolución* emitida el 21 de abril de 2025 por el Departamento de Asuntos del Consumidor (en adelante, DACo) y notificada al día siguiente. En el referido dictamen, el DACo declaró No Ha Lugar la querella presentada.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen del DACo.

### I

Los hechos ante nuestra consideración tienen su génesis con la presentación de tres *Querellas* el 22 de octubre de 2024, por la

Número Identificador
SEN2025_____

Sra. López, el Sr. Dones y la Sra. Falcón (en adelante, parte querellante-recurrente) contra la Junta de Directores y el Consejo de Titulares del Condominio Gallardo Gardens representado por su presidenta la señora Sandra Rivera Sánchez (en adelante, parte querellada-recurrida) sobre la *Ley de Condominios de Puerto Rico*, Ley Núm. 129 de 2020, 31 LPRA sec. 1921.[1] En los referidos escritos, los querellantes pretendían impugnar varios acuerdos adoptados el 7 de octubre de 2024 en la asamblea extraordinaria celebrada por el Consejo de Titulares. En específico, sobre el planteamiento de error realizado ante esta curia, los querellantes arguyeron que la agenda de la asamblea no incluía el aumento de cuota de mantenimiento, por lo que solicitó al organismo administrativo que dejara sin efecto el aumento por no haber estado en los temas de la convocatoria.

El 11 de febrero de 2025, la parte querellada presentó su *Contestación a Querella* en la cual se opuso a lo alegado por la parte querellante.[2] Del mismo modo expresó que presentó el presupuesto sugerido con tres opciones donde se reflejaba la partida de administración y mantenimiento que provocaría el aumento en la cuota de mantenimiento. El 12 de febrero de 2025, el DACo consolidó las tres querellas presentadas en una.

Así las cosas, y luego de la celebración de una vista el 2 de abril de 2025, el DACo emitió una *Resolución* el 21 de abril de 2025 con notificación el día siguiente, mediante la cual declaró No Ha Lugar la *Querella* presentada.[3] En síntesis, **el foro administrativo razonó sobre el aumento de cuotas de mantenimiento que, si bien la agenda de la asamblea extraordinaria no establecía de manera literal su aumento, la selección de las compañías de**

---

[1] Apéndice del recurso de *Revisión Administrativa*, págs. 21-37.
[2] *Id.* págs.45-48.
[3] *Id.* págs. 1-20.

**administración y mantenimiento por el voto mayoritario tuvo el efecto inevitable de aumentar las cuotas de mantenimiento**. Añadió que, tras una lectura minuciosa del acta de la asamblea extraordinaria del 7 de octubre de 2024, **no surgía que los querellantes hubiesen manifestado su oposición a los acuerdos adoptados por el Consejo de Titulares, ni que hubiesen expresado su sentir respecto a que en la agenda de la asamblea extraordinaria no se contemplaba un aumento en las cuotas de mantenimiento.**

Inconformes, el 22 de mayo de 2025, la parte recurrente comparece ante nos mediante el presente recurso de *Revisión Administrativa* en el cual nos señala la comisión del siguiente error:

> **ERRÓ EL [DACo] AL DECLARAR SIN LUGAR LA QUERELLA Y AL NO DECLARAR NULA LA ASAMBLEA Y VOTACIÓN SOBRE EL ASUNTO DE AUMENTO DE COUTAS DE MANTENIENTO (*sic*) DEBIDO A FALTA DE DEBIDA NOTIFICACIÓN DE DICHO ASUNTO POR NO INCLUIRSE EN LA CONVOCATORIA.**

En respuesta, el 20 de junio de 2025, la parte recurrida presentó su *Alegato en Oposición.* Resolvemos con la comparecencia de ambas partes.

**II**

**A.**

La *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA 9601, *et seq.* (LPAU) establece los estándares de revisión judicial de órdenes, resoluciones y providencias dictadas por las agencias administrativas. En lo pertinente al caso que nos ocupa, la Sección 4.2 de la LPAU, 3 LPRA sec. 9672, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo

en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. [...]

Las facultades adjudicativas de una agencia administrativa están regidas por la *Ley de Procedimiento Administrativo Uniforme, supra*, y por la jurisprudencia interpretativa. En especial, la Sección 3.1 de la LPAU, 3 LPRA sec. 9641, requiere que los organismos administrativos fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. En términos sustantivos y procesales, se ha resuelto que los procedimientos y las decisiones de las agencias administrativas están cobijados por una presunción de regularidad y corrección. *Graciani Rodríguez v. Garage Isla Verde, LLC.*, 202 DPR 117, 128-129 (2019). Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc.*, 161 DPR 69, 77-78 (2004).

Las decisiones administrativas deben ser respetadas a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente. *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009). El alcance de la revisión judicial de las decisiones administrativas conforme la Sección 4.5 de LPAU, 3 LPRA sec. 9675, se limitan a determinar si el remedio brindado por la agencia es el apropiado; si las determinaciones de hechos realizadas se basan en evidencia sustancial que obra en el expediente administrativo y si las conclusiones de derecho son correctas mediante una revisión completa. Véase, además, *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 281 (2000).

Respecto a las determinaciones de hechos, la Sección 4.5 de la LPAU, *supra,* dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo." El concepto de evidencia sustancial consiste en "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012).

Por otro lado, la Sección 4.5 de la LPAU, *supra,* dispone que las conclusiones de derecho "…serán revisables en todos sus aspectos por el tribunal". Sobre el mismo el Tribunal Supremo en el caso *Vázquez v. Consejo de Titulares,* 2025 TSPR 56 (2025) adoptó lo resuelto por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024). Conforme a lo establecido por el Tribunal Supremo en el caso precitado, los tribunales deben ejercer un juicio independiente al de un organismo administrativo, al decidir si esta ha actuado dentro del marco de sus facultades estatutarias. *Id.* Del mismo modo, contrario a la práctica de las pasadas décadas, los tribunales no vienen obligados a darle deferencia a la interpretación de derecho que haga una agencia administrativa cuando la ley es ambigua. *Id.*

**B.**

La Ley Núm. 129 de 16 de agosto de 2020, *Ley de Condominios de Puerto Rico,* 31 LPRA sec. 1921 *et seq.* (Ley de Condominios), prima el ordenamiento jurídico sobre la gobernanza de los inmuebles sujetos al régimen de propiedad horizontal. A este estatuto, le siguen la escritura matriz y el reglamento del condominio de que se trate. *Con. Tit. Centro Int'l Torre II v. PRCI,* 210 DPR 403, 413-414 (2022). La primacía del estatuto implica que cualquier cláusula o regla claramente contraria a sus disposiciones sería nula. *Id.*, pág. 414; *Brown III v. J.D. Cond. Playa*

*Grande*, 154 DPR 225, 238-239 (2001). Del mismo modo, nuestro Tribunal Supremo ha resuelto que las disposiciones del estatuto especial son de carácter mandatorio y no supletorio. *Con. Tit. Centro Int'l Torre II v. PRCI, supra*; *Condominio First Federal Savings v. LSREF2 Island Holdings*, 202 DPR 934, 940 (2019).

El Consejo de Titulares es la autoridad máxima sobre el inmueble sometido al Régimen de Propiedad Horizontal. Artículo 48 de la Ley de Condominios, 31 LPRA sec.1922t. Esta entidad tendrá personalidad jurídica propia y estará integrada por todos los titulares del inmueble. *Id.* La Ley de Condominios, *supra*, establece que las resoluciones y acuerdos, adoptados por el Consejo de Titulares en asambleas debidamente convocadas y constituidas, serán de cumplimiento para todos los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio.

La Junta de Directores, de otro lado, es el órgano ejecutivo de la comunidad de titulares. Artículo 53 de la Ley de Condominios, 31 LPRA sec.1922y. Entre las funciones encomendadas mediante la Ley de Condominios, *supra*, está el atender "lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares".

Respecto a las reuniones, notificaciones y procedimientos llevados a cabo en el inmueble para la celebración de una asamblea ordinaria así como extraordinaria, el Artículo 50 de la Ley de Condominios, 31 LPRA sec.1922v, establece lo siguiente:

> **El Consejo de Titulares se reunirá por lo menos una (1) vez al año para aprobar el presupuesto anual y los estados financieros**, **y en las demás ocasiones que convoque el Director, el Presidente de la Junta de Directores, una mayoría de los miembros de la Junta de Directores**, o la quinta (1/5) parte de los titulares o un número de éstos cuyos apartamentos representen al menos el veinte por ciento (20%) de los porcentajes de participación en las áreas comunes. **La convocatoria**

**por titulares requerirá notificación previa no menor a quince (15) días de la fecha seleccionada para la celebración de la asamblea**.

**La convocatoria estará firmada por la persona o personas que convoquen e indicará los asuntos a tratar y hora, día y lugar de la reunión**. Las citaciones se harán por escrito, entregándose en el apartamento perteneciente al titular que lo resida, por medio de carta que el sistema de correo pueda certificar su envío y por correo electrónico o por cualquier otro medio, siempre que la administración pueda validar su envío en caso de cuestionarse por el titular, siempre dirigida a la dirección que a esos fines haya designado el titular al registrarse.

Si intentada una notificación de convocatoria al titular fuese imposible practicarla por no residir en su apartamento y el Consejo no tener ningún método alterno de notificación, se entenderá realizada la misma, mediante la colocación de la convocatoria en el tablón de edictos del Consejo de Titulares, o en lugar visible de uso general habilitado al efecto, con diligencia expresiva de la fecha y motivos por los que se proceda esta forma de notificación, firmada por la persona o personas que convocan. Para que la notificación practicada de esta forma produzca plenos efectos jurídicos, deberá realizarse al menos tres (3) días previos a la fecha de la asamblea.

**La citación para la asamblea ordinaria anual, cuya fecha se fijará en el reglamento, se hará cuando menos con quince (15) días de antelación, y para las extraordinarias, un mínimo de cinco (5) días de antelación a su celebración**, excepto que se establezca distinto en otro Artículo de esta Ley. Dichas Asambleas, no se podrán convocar para realizarse dentro del horario habitual de trabajo. (Énfasis nuestro.)

**III**

En el caso ante nuestra consideración, la parte recurrente nos indica que el DACo incidió al declarar sin lugar la *Querella* y **al no declarar nula la asamblea y la votación sobre el aumento de la cuota de mantenimiento**, pues esta **entiende que la falta de debida notificación del referido asunto en la convocatoria de la asamblea extraordinaria impidió su discusión y aprobación**. No le asiste la razón. Veamos.

Es norma reiterada que, mediante la revisión judicial, el Tribunal de Apelaciones debe determinar si el remedio brindado por la agencia administrativa es el apropiado; si las determinaciones de

hechos realizadas se basan en evidencia sustancial que obra en el expediente administrativo y si las conclusiones de derecho son correctas mediante una revisión completa y absoluta. Siempre tomando en consideración, que el criterio rector para los tribunales para revisar una decisión administrativa será la razonabilidad en la actuación de la agencia.

Por otro lado, **respecto a la notificación de la convocatoria de una asamblea extraordinaria**, el Artículo 50 de la Ley de Condominios, *supra*, establece que esta debe ser notificada con un mínimo de cinco (5) días de antelación a su celebración, estará firmada por la persona o personas que la convoquen e indicará los asuntos a tratar y hora, día y lugar de la reunión.

El DACo determinó en la Resolución recurrida, luego de aquilatar los testimonios recibidos, lo siguiente:

> [...] La convocatoria para la asamblea extraordinaria de referencia fue enviada en o alrededor del 19 de septiembre de 2024 y **los querellantes, Carmen M. Falcón Vargas, Wanda López y Kenneth Dones Salgado recibieron la convocatoria con anticipación y participaron de la reunión de titulares**. Según surge del acta de la asamblea extraordinaria, **se discutieron las propuestas recibidas y se seleccionaron las compañías que estarían brindando los servicios de administración y mantenimiento**. Si bien es cierto que **la agenda de la reunión no establecía literalmente un aumento en las cuotas de mantenimiento**, como aducen los querellantes ante este foro administrativo, **no es menos cierto que, la selección de estas compañías tuvo el efecto inevitable de un aumento en las cuotas de mantenimiento y un impacto en el presupuesto 2024-2025**. Cabe destacar que, **previo a la asamblea extraordinaria y así fue discutido en dicha reunión, los titulares tuvieron la oportunidad de recibir seis (6) distintos modelos de presupuestos, en donde se hicieron distintas combinaciones con las propuestas recibida, por lo que, de antemano, ya los querellantes conocían que la selección de las compañías propuestas tendría un impacto presupuestario en las cuotas de mantenimiento.** Así las cosas, el Consejo de Titulares, con el voto mayoritario acordó aprobar el presupuesto 2024-2025, y, en consecuencia, se seleccionaron las compañías de administración y mantenimiento. De una minuciosa lectura del acta de la asamblea extraordinaria del 7 de octubre de 2024 **no surge que los querellantes hayan manifestado su oposición a los acuerdos adoptados,**

ni tampoco hayan expresado su sentir en cuanto a que la agenda de la asamblea extraordinaria no contemplaba un aumento en las cuotas de mantenimiento. No hay muestra alguna de que se les haya coartado a los querellantes su derecho a hacer expresiones o proposiciones. Por el contrario, solo se limitaron a emitir sus votos en contra al aumento implícito contenido en el nuevo presupuesto de condominio.

Resulta importante resaltar que, conforme el testimonio recibido por la parte querellante, en este caso Carmen M. Falcón Vargas, los querellantes alegan no haber recibido las propuestas de las compañías de administración y mantenimiento del condominio. Sin embargo, durante la vista administrativa se descubrió que, en efecto, si recibieron las propuestas como tal. En el caso de la querellante Carmen M. Falcon Vargas, mecanismo previamente establecido en el Registro de Titulares, es decir, por correo regular. Sin embargo, admitió la propia co-querellante, que los recibió en su correo electrónico, y que no tuvo la oportunidad de revisar las propuestas [por] no tener acceso a su correo electrónico. A este Departamento le llama la atención esta alegación, el cual no merece nuestra credibilidad porque precisamente, la propia co-querellante alegó en la vista administrativa que en una previa ocasión había enviado a la parte querellada unas propuestas de servicios utilizando precisamente su correo electrónico para estos fines. Adicional, sorprende de sobremanera que los otros co-querellantes, Wanda Lopez y Kenneth Dones Salgado hayan alegado en su querella el hecho de no recibir las propuestas de servicios. Sin embargo, en la vista administrativa, también admitieron que si recibieron las propuestas de servicios, por correo electrónico y con antelación a la asamblea extraordinaria del 7 de octubre de 2024. Así las cosas, los querellantes actuaron en contra de sus propios actos y se cruzaron de brazos. De hecho, tampoco surge del acta de la asamblea extraordinaria que hubiesen levantado esta situación en apoyo a su oposición a la aprobación de las propuestas de servicios. Cabe destacar que, del testimonio de la testigo Sandra Rivera Sánchez surge que esta propuestas ya habían sido enviadas a todos los titulares previo a una asamblea extraordinaria a celebrarse para la fecha del 28 de agosto de 2024, donde precisamente se discutirían estas propuestas, sin embargo, por acuerdo de los titulares presentes, se determinó discutir y aprobar las propuestas en una asamblea extraordinaria entrante. Con excepción de la co-querellante, Carmen M. Falcon Vargas, quien admitió en la vista administrativa no recordar si para la asamblea del 28 de agosto de 2024 hubiese recibido las propuestas, de la testigo de la parte querellada, los titulares, incluyendo los demás co-querellantes admitieron haberlas recibido. Esto, sumado a que previo a la asamblea extraordinario del 7 de octubre de 2024, según el testimonio de la testigo

> **de la parte querellada, los titulares, incluyendo los querellantes, recibieron una tabla comparativa de las distintas propuestas recibidas, y modelos presupuestarios.**[4]

Luego de un estudio del legajo administrativo y el derecho antes expuesto, resolvemos que no erró el DACo al declarar sin lugar la *Querella* y **al no declarar nula la asamblea y la votación sobre el aumento de la cuota de mantenimiento**. Surge de la convocatoria a la Asamblea Extraordinaria del Condominio Gallardo Gardens con fecha del 19 de septiembre de 2024, que se convocó una asamblea para el 7 de octubre de 2024 con una agenda que incluía, entre otros asuntos, los siguientes: (1) Presentación y votación para aprobación de presupuesto (2) la presentación de cotizaciones de compañías de administración; (3) la votación para la selección de compañía de administración; (4) la presentación de cotizaciones de compañías sobre servicio de mantenimiento y (5) la votación para la selección de compañía de servicio de mantenimiento.[5] Surge en el Acta de la asamblea extraordinaria celebrada, lo siguiente:

> El tesorero, Jorge Pietri, titular del apartamento H 1A, presenta las opciones de presupuestos, combinados con dos alternativas de administradores y mantenimiento. El tesorero menciona que tendremos un aumento en la cuota de mantenimiento, ya que nuestras cuentas han sentido el efecto de la inflación. La mayor parte de nuestro presupuesto se consume en administración y mantenimiento. Se discute el presupuesto en todas sus partes, y se aclaran dudas y preguntas de los titulares.
>
> […]
>
> La Sra. Berrios, titular del E-2, presenta una moción para se tome en consideración nuevas propuestas de administración y mantenimiento, y que se cree un comité que entreviste y evalúe las propuestas de administración. Secunda la Sra. Wanda Lopez, titular E 6. Se opone la Sra. Maldonado, titular del H 2B. Votación: Titulares a favor 8, proxy´s a favor 7, titulares en contra 14, proxy´s en contra 6.

---

[4] Apéndice del recurso de *Revisión Administrativa*, págs 13-15.

[5] *Id.*, págs. 38-39.

Se presenta y describen las dos alternativas de presupuesto para votación.

[...]

Se hace votación sobre la recomendación de la Junta y la otra alternativa de mantenimiento de la Sra. Fonseca. [...] Prevalece la alternativa de presupuesto con la compañía de administración ICON y mantenimiento WR Cleaning Services.

La nueva cuota de mantenimiento según el nuevo presupuesto aprobado, comenzará el 1 de noviembre de 2024. Los apartamentos que pagaban $84.00 ahora pagaran $104.00, los que pagaban $68.00 pagaran $84.00, y los que pagaban $60.00 pagaran $74.00.[6]

Si bien es cierto que en la agenda de la Convocatoria de la asamblea extraordinaria no se establecía de manera literal el aumento de la cuota de mantenimiento del inmueble, **si estaba incluido la aprobación del presupuesto y la selección de las compañías de administración y mantenimiento del Condominio Gallardo Gardens lo cual tendría el efecto implícito de aumentar esta cuota**.[7] Coincidimos con el organismo administrativo en que al haber discutido y seleccionado, mediante el voto mayoritario, las compañías de administración y mantenimiento del inmueble, se aumentó de manera inevitable las cuotas de mantenimiento.[8] Esto cobra más fuerza por el hecho de que los recurrentes confirmaron que fueron notificados de la convocatoria a la asamblea extraordinaria y en el *Acta* de la aludida asamblea **no surge que los recurrentes no hubieran sido notificados de la convocatoria antes mencionada, ni que hubiesen manifestado su oposición a los acuerdos adoptados por el Consejo de Titulares, ni que hubiesen expresado su sentir respecto a que en la agenda de la asamblea extraordinaria no se contemplaba un aumento en las cuotas de mantenimiento de manera directa**.[9]

IV

---

[6] *Id.* págs. 42-44.
[7] *Id.* págs. 38-39.
[8] *Id.* págs.42- 44.
[9] *Id.*

Por los fundamentos expresados, confirmamos el dictamen de DACo.

**Notifíquese.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones